```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


JERMAINE MURRAY,                  :     3:03cv957(WWE)
     Petitioner,                  :
                                  :
v.                                :
                                  :
JOHN ASHCROFT, ATTORNEY           :
GENERAL,                          :
and EDUARDO AGUIRRE, ACTING       :
DIRECTOR OF THE BUREAU OF         :
CITIZENSHIP AND IMMIGRATION       :
SERVICES,                         :
     Respondents.                 :
```

**RULING ON MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Jermaine Murray filed this petition for habeas corpus pursuant to 28 U.S.C. Section 2241. He is a lawful resident alien who is the subject of a removal order from the Bureau of Citizenship and Immigration Services ("Bureau"), and is presently confined at the Federal Detention Center in Oakdale, Louisiana. The respondents named are John Ashcroft, the Attorney General of the United States, and Eduardo Aguirre, the Acting Director of the Bureau.

Respondents have filed a motion to dismiss based on their assertion that petitioner has failed to name the proper respondent and that the court lacks personal jurisdiction over the named respondents. For the following reasons, the motion to dismiss will be denied.

## BACKGROUND

Petitioner is a native of Jamaica, who is a resident of Connecticut. He was convicted on August 31, 1999, and March 10, 2000, in Connecticut Superior Court, of criminal possession of marijuana in violation of Connecticut General Statutes Section 21a-279. In April, 2000, petitioner was found in violation of his probation terms and sentenced to six months incarceration.

On September 25, 2000, the INS in Hartford, Connecticut, took petitioner into custody for purposes of removal. Petitioner was thereafter transferred to the Federal Detention Center in Oakdale, Louisiana.

Removal proceedings were initiated against petitioner based on his conviction for an aggravated felony. On May 3, 2001, an immigration judge in Oakdale, Louisiana, sustained the charges in the Notice to Appear and ordered petitioner removed to Jamaica. Petitioner appealed his removal order to the Board of Immigration Appeals ("BIA").

On April 11, 2002, the BIA sustained petitioner's appeal, finding that his two convictions for possession of marijuana do not constitute an aggravated felony.

The INS then filed a new charge of removability against Murray on the ground that his two marijuana possession convictions subjected him to removal under INA Section 237(a)(2)(B)(I), as controlled substance offenses.

An immigration judge in Oakdale, Louisiana, ordered petitioner removed on the new charge, and denied petitioner's motion to terminate proceedings based on <u>res judicata</u>.  The BIA thereafter affirmed the immigration judge's holding.

Petitioner is now subject to a final order of removal, and his removal has been stayed pending this Court's review of the merits of his petition.

## **DISCUSSION**

**A.   Proper Custodian**

The government argues that the Attorney General and the Acting Director of the Bureau are not proper respondents in this case because they are not the immediate physical custodians with day-to-day control over the petitioner.  Petitioner counters that the named respondents should be considered the proper custodians.

28 U.S.C. Section 2241 provides that a writ of habeas corpus shall be granted only if "a prisoner" is in custody under the authority of the United States "in violation fo the Constitution or laws or treaties of the United States."  28 U.S.C. Section 2242 specifies that the application "shall allege...the name of the person who has custody over him."

Although the statute does not specify that the named respondent be the petitioner's immediate physical custodian, courts have generally treated the individual with day-to-day control over the petitioner as the custodian for habeas purposes. <u>Henderson v. INS</u>, 157 F. 3d 106, 122 (2d Cir. 1998), <u>cert. denied</u>

sub nom., Reno v. Navas, 526 U.S. 1004 (1999). The immediate custodian rule is "a practical one based on common sense administration of justice..." Padilla v. Rumsfeld, 352 F. 3d 695, 705 (2d Cir. 2003). As Padilla elaborated, in the usual situation the warden becomes the respondent by default, since the individuals who had previously played a part in confining the petitioner, such as the sentencing judge and prosecuting attorney, no longer play a substantial part in the petitioner's continued confinement.

The Second Circuit has yet to clarify whether the immediate custodian rule should be applied in the context of immigration habeas cases. In Henderson, the Second Circuit declined to resolve the issue. Recently, in Padilla v. Rumsfeld, the Second Circuit departed from the immediate custodian rule in favor of naming as respondent the Secretary of Defense, a national-level official who has "an extraordinary and pervasive role" in the detention, restraint and release of the petitioner. However, Padilla specified that it did not articulate a rule defining the proper respondent in a habeas case, and limited its holding to the facts of the case.

With no clear precedent, this Court reviews Henderson's lengthy analysis of the pros and cons of permitting the Attorney General to be named as respondent in immigration habeas cases, and treatment of the issue by other circuits.

Henderson instructs that the identity of the proper custodian depends on "who has power over the petitioner" as well as the convenience of the parties and the court. 157 F. 3d at 122. As an argument in favor of allowing the Attorney General to be named as a proper respondent, the Second Circuit cited the Attorney General's "extraordinary and pervasive role" in immigration matters that is "virtually unique." On the other hand, the Court recognized that the Attorney General retains statutory custodianship over prisoners and aliens, and he is nonetheless not the proper respondent in a prisoner habeas case. Although permitting the Attorney General to be named as a respondent might reduce docket overcrowding in districts with a high concentration of detained aliens, the Court noted that it might also shift the burden to those districts where a disproportionate number of aliens reside. The Court observed further that permitting the Attorney General to be named as respondent would not result in widespread forum shopping since traditional venue principles would apply.

Circuit courts that have rejected broadening the definition of custodian so as to permit the Attorney General to named as a respondent have evinced a concern for maintaining a consistent rule that will promote easy judicial administration.

In Yi v. Maugans, 24 F. 3d 500, 507 (3d Cir. 1994), the Third Circuit rejected a broader definition of "custodian," noting that otherwise the Attorney General could be considered

the custodian of every alien and prisoner in light of the Attorney General's ultimate control of district directors and prisons.

The First Circuit, after review of non-immigration habeas cases, concluded that the Attorney General's role with regard to alien detainees was not different enough from the Attorney General's role with regard to prisoners to justify a rule that makes the Attorney General custodian of aliens but not prisoners. Vasquez v. Reno, 233 F. 3d 688, 693 (1st Cir. 2000). Accordingly, Vasquez held that, absent exceptional circumstances, an alien bringing a habeas action must name as respondent his immediate custodian, who is the individual having day-to-day control over the facility in which the alien is detained. In support of its holding, the Court asserted that the immediate custodian rule is easily administered and forecloses the potential for forum shopping by aliens filing habeas petitions, which practice would eventually complicate and mire the habeas proceedings with consideration of venue and forum non conveniens.

The Sixth Circuit followed Vasquez's reasoning as to the practical administration of the immediate custodian rule, declining to adopt a broader definition of custodian for all immigration habeas cases. Roman v. Ashcroft, 340 F. 3d 314 (6th Cir. 2003). However, the Sixth Circuit recognized that the Attorney General's relationship to prisoners differs significantly from his relationship to detained aliens, in that

he plays a much larger role in the immigration context. Therefore, Roman left open the possibility that the Attorney General may be considered the proper custodian in immigration habeas cases under certain circumstances where strict adherence to the immediate custodian rule denies the petitioner access to habeas review.[1]

Almost two weeks after the Sixth Circuit issued Roman, the Ninth Circuit held that the Attorney General was the proper respondent to an immigration habeas petition, since in the immigration context, a custodian should be based "more on the legal reality of control than the technicalities of who administers on a day-to-day basis the facility in which an individual is detained." Armentero v. INS, 340 F. 3d 1058, 1070 (9th Cir. 2003). This holding was prompted, in large part, by what Court saw as "significant differences between the situation of federal criminal prisoners and that of immigration detainees...." One such difference necessitating a "different concept" of custodian is the practice of holding immigration detainees in a range of institutions, including state and local institutions retained by contract. See Rachel E. Rosenbloom, Is

---

[1] Such extraordinary circumstances would include a situation where the detainee is held in a location unknown to even the alien's attorneys, or where the government's continual transfer of a detainee to new district demonstrates a clear effort to evade an alien's habeas petition. The Sixth Circuit rejected the argument that an overcrowded docket results in denial of meaningful habeas corpus relief.

the Attorney General the Custodian of an INS Detainee, 27 N.Y.U. Rev. L. & Soc. Change 543, 575 (2002)[2]. Accordingly, the Ninth Circuit observed that, when a detainee is held in a state and local institution, a writ directed to the warden makes little legal sense, since the warden's control over the detainee results from contractual arrangements with federal authorities, and the warden does not have the power to release the detainee, except if explicitly so ordered by the federal authority. The Court noted that the "frequency of transfers and the particularly scattershot distribution of aliens in local jails across the nation exacerbate obstacles to bringing habeas petitions," and "the muddled custodial circumstances created by the detention of persons via contract arrangements between federal immigration authorities and state and local facilities poses a particular problem for an immigration detainee's identification of a custodian who has the power to direct his or her release."

The Supreme Court has instructed that the "very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." Harris v. Nelson, 394 U.S. 286, 291 (1969). In light of the problems unique to immigration cases as discussed by Armentero and Henderson, this

---

[2] Rachel Rosenbloom notes that in Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973) the Supreme Court's concern was that the respondent have the power to free the petitioner from legal, not physical, restraint.

Court finds that departure from the immediate custodian rule is warranted. Further, adherence to the immediate custodian rule may not actually promote the easy administration of habeas petitions. As <u>Armentero</u> noted, the immediate custodian rule could complicate a petition proceeding with a "time-consuming transfer or dismissal" after a detainee is moved out of the reviewing court's territorial jurisdiction. Accordingly, the Court will deny the motion to dismiss on the basis of failure to name the proper respondent.

<u>     Personal Jurisdiction and Venue</u>

In a habeas case, a Court has personal jurisdiction as long as the custodian can be reached by service of process. <u>Padilla</u>, 352 F. 3d at 708.

Connecticut's relevant long-arm statute, Section 52-59b(a)(1), provides that a court may exercise jurisdiction over a nonresident defendant who "transacts any business within the state...." When determining whether the defendant transacted any business within Connecticut, courts do not apply a rigid formula, but instead balance several considerations, including public policy, common sense, and the chronology and geography of relevant factors. <u>See</u> <u>Sherman Associates v. Kals</u>, 899 F.Supp. 868, 870 (D. Conn. 1995). Here, both respondents, the Attorney General and the Acting Director of the Bureau, transact business in Connecticut when they issue and/or implement detention or deportation orders that profoundly affect individuals and their

families residing in Connecticut.  Accordingly, the Court finds that personal jurisdiction is satisfied.

To determine whether venue in Connecticut is proper, the Court must consider the location where the material events took place, the location of the relevant records and witnesses, the convenience of the parties, and the familiarity of the court with applicable law.

The events leading to petitioner's removal proceeding occurred in Connecticut.  The records and witnesses relevant to his drug possession charges are found in Connecticut.  Petitioner is currently detained in Louisiana, but his attorney, who represented him in the prior immigration proceedings at Oakdale and before the BIA, practices in this district.  The Court will be familiar with the relevant law when it considers the merits of the case.  The Court finds that venue in Connecticut is proper.

## CONCLUSION

For the foregoing reasons, the motion to dismiss [doc. # 8] is DENIED.  The respondents are instructed to file a memorandum to show cause why this petition should not be granted by March 28, 2004.

So Ordered this 4th day of February, 2004, at Bridgeport, Connecticut.



_____/s/_____
    WARREN W. EGINTON, SENIOR UNITED STATES DISTRICT JUDGE