UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JERMAINE MURRAY, | : | |
| Petitioner, | : | CIVIL NO. 3:03CV957(WWE) |
| v. | : | |
| JOHN ASHCROFT, et al., | : | |
| Respondents. | : | May 17, 2004 |

### GOVERNMENT'S RESPONSE TO HABEAS PETITION

Respondents, John Ashcroft, Attorney General of the United States, and Eduardo Aguirre, Acting Director of the Bureau of Citizenship and Immigration Services,[1] through undersigned counsel, hereby respectfully submit this response to the petition for writ of habeas corpus filed by Jermaine Murray. For the following reasons, the habeas petition should be denied.

### BACKGROUND

The Court is very familiar with the factual and procedural history of this case, but for ease of reference, the material facts are summarized herein. Petitioner Jermaine Murray is a native and citizen of Jamaica who entered the United States on June 2, 1993, as an immigrant. See Murray v. Ashcroft, Civ. No. 3:01cv2422(WWE) (hereinafter "Murray I"), Govt. Response

---

[1] On March 1, 2003, the Immigration and Naturalization Service ("INS") was abolished and its functions transferred to three bureaus within the Department of Homeland Security pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2178. The enforcement functions of INS were transferred to the Bureau of Immigration and Customs Enforcement ("BICE") while its service functions were transferred to the Bureau of Citizenship and Immigration Services ("BCIS"). The Director of the BCIS is not a proper respondent to this case and, as an initial matter, the petition should be dismissed as to him.

to Court's Order to Show Cause and exhibits attached thereto (filing no. 11); and Govt. Motion to Dismiss filed herein. Petitioner was convicted, on August 31, 1999, and March 10, 2000, in the Superior Court at Danbury, Connecticut, of criminal possession of marijuana in violation of Conn. Gen. Stat. § 21a-279(c). See id. He was sentenced to jail time, suspended, for these offenses, as well as probation. Id. In April 2000, petitioner was found in violation of the terms of his probation and sentenced to six months incarceration.

On September 25, 2000, the INS in Hartford, Connecticut, took petitioner into custody for purposes of removal. Shortly thereafter, petitioner was transferred to the Federal Detention Center in Oakdale, Louisiana, and the INS in Oakdale initiated removal proceedings by filing a Notice to Appear charging petitioner as removable under section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony. On May 3, 2001, an Immigration Judge in Oakdale, Louisiana, sustained the charges in the Notice to Appear and ordered petitioner removed to Jamaica. Petitioner timely appealed the removal order to the Board of Immigration Appeals.[2] On April 11, 2002, the BIA sustained petitioner's appeal, finding that his two convictions for possession of marijuana do not constitute an aggravated felony.

Subsequently, the INS in Oakdale, Louisiana, filed a new charge of removability against Murray on the ground that his two marijuana possession convictions subject him to removal under INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), as controlled substance offenses. See

---

[2] On December 27, 2001, while his appeal to the BIA was pending, petitioner filed his first habeas petition in this Court. The parties stipulated to voluntary dismissal of the habeas petition. See Murray I, filing no. 12.

Govt. Motion to Dismiss, Ex. A-3, Notice to Appear dated 4/16/2002.[3]  An Immigration Judge in Oakdale, Louisiana, denied petitioner's motion to terminate proceedings based on *res judicata* because the new ground of removability was not litigated in the previous proceeding.  See Govt. Motion to Dismiss, Ex. A-5, IJ Oral Decision, at 2-3.  Thus, the IJ ordered petitioner removed based on the new charge.  Id.  The BIA affirmed the IJ's holding without opinion pursuant to its summary affirmance procedures.[4]  See Govt. Motion to Dismiss, Ex. A-6, BIA Decision dated 4/14/2003.[5]

On May 30, 2003, Murray filed the instant habeas petition and a motion for stay of removal in this Court.  On June 18, 2003, in response to a notice of intent to remove filed by the Government respondents, the Court entered an order staying petitioner's removal pending consideration of the petition.  On February 5, 2004, the Court denied the Government's motion to dismiss the habeas petition for lack of jurisdiction or, in the alternative, to transfer the petition to the Western District of Louisiana and ordered the Government to file a response to the petitioner's substantive arguments made in the petition.   For the following reasons, the petition should be denied on the merits.

---

[3]  Prior to the removal hearing, the INS added an additional charge based on another possession of marijuana conviction occurring on the same date as a previous charge - - March 10, 2000.  See Govt. Motion to Dismiss, Ex. A-4.

[4]  See 8 C.F.R. 1003.1(a)(7).  On February 28, 2003, the Attorney General published a technical rule that moved 8 C.F.R. 3.1 to 8 C.F.R. 1003.1.  See Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed. Reg. 9824, 9332 (Feb. 28, 2003).

[5]  Petitioner's subsequent motion for reconsideration was also denied by the BIA.  See Govt. Motion to Dismiss, Ex. A-7, BIA Decision dated 5/6/2003.

**ARGUMENT**

There is no dispute that Murray is an alien and that he committed controlled substance offenses that render him removable under INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i). Nonetheless, Murray argues that the Immigration Judge's finding that he is removable under INA § 237(a)(2)(B)(i) should be vacated based on *res judicata*. The Court should reject Murray's argument.

Where there is no dispute that the person in a deportation proceeding is an alien and the only issue is removability, the result of an earlier proceeding should not be *res judicata*. This is made clear by the fact that, if Murray's arguments are accepted by the Court, a criminal alien with no lawful right to be in the United States will attain license to remain here indefinitely.

In support of his claim, Murray cites to the Fifth Circuit Court of Appeal's decision in Medina v. INS, 993 F.2d 499, 502, reh'g denied, 1 F.3d 315 (5th Cir. 1993). Although Medina undoubtedly contains some broad language supportive of Murray's position, it is not precedent here in the Second Circuit.[6] In addition, given the difference between Medina and this case on the fundamental issue of alienage, Medina should be confined to its facts and not extended to this proceeding.

In Medina, the petitioner was first placed in exclusion proceedings. However, the INS conceded to the Immigration Judge that Medina was a U.S. citizen, and waived appeal. 993 F.2d

---

[6] Although the Second Circuit has applied *res judicata* in immigration proceedings so as to preclude an alien from relitigating his claim before the BIA, see Hibbert v. United States, 554 F.2d 17, 20 n.1 (2d Cir. 1977), the undersigned is unaware of any Second Circuit precedent that would support Murray's claim that it should apply as against the Government under circumstances similar to those herein.

at 499.  The Immigration Judge then issued an order admitting Medina to the United States as a citizen, and he was issued a passport by the State Department.  Id. at 501.  Subsequently, however, deportation proceedings were instituted after it appeared that the earlier citizenship finding may have been based on an erroneous interpretation of law by the Immigration Judge.  The second proceeding resulted in an order of deportation by the BIA.  On appeal, the Fifth Circuit granted the petition for review, vacated the deportation order, and ordered the INS to certify again that Medina was a citizen.  Id. at 504.  The court stated that, having waived appeal of the Immigration Judge's finding in the first proceeding, the INS could not "now challenge Medina's citizenship simply by treating the original proceeding as though it had never happened and starting all over again under a different section of the immigration law."  Id.

It is clear that the court's analysis in Medina was strongly influenced by the fact that the issue before it was the fundamental one of citizenship.  The court found inapposite certain cases relied upon by the Government where deportation proceedings had been instituted following admission into the United States, on the ground that in each of those cases . . .

> . . . the person admitted and later deported had not been recognized formally as a United States citizen; neither had a passport been issued as a result of such recognition.  We find that distinction compelling, especially in light of the Supreme Court's recognition that citizenship is a "priceless benefit," the wrongful denial of which is "more serious than a taking of one's property, or the imposition of a fine or some other penalty."

993 F.2d at 502-503 (quoting Schneiderman v. United States, 320 U.S. 118, 122 (1943)).  On rehearing, the court emphasized again that . . .

> . . . the Supreme Court's recognition that claims to American citizenship in deportation proceedings implicate liberty and property rights supports our conclusion, reiterated today, that a final, uncontested grant of citizenship cannot be revisited again at the INS's pleasure.

1 F.3d at 315. Similarly, in Ramon-Sepulveda v. INS, 824 F.2d 749, 750 (9th Cir. 1987), the Ninth Circuit held that an earlier finding that the INS had failed to prove that the petitioner was an alien was *res judicata* and barred a later proceeding.

The situation in this case is entirely different. There was no finding in the first proceeding that Murray is a U.S. citizen; on the contrary, Murray admitted throughout both removal proceedings that he is an alien. Further, there is no question that Murray committed crimes that render him removable. Consequently, there is no question that Murray is without any claim -- other than his *res judicata* argument -- that he ought to be permitted to remain in the United States.

The consequence of the Fifth Circuit's acceptance of the *res judicata* argument in Medina was only that a person who had claimed to be a citizen, and who had been found to be a citizen, was outside the reach of the immigration laws and could not be put in deportation proceedings. In contrast, the consequence of the Court's acceptance of the *res judicata* argument in this case would be that a person who has never claimed to be a citizen, who has never been found to be a citizen, who does not deny that he is removable, would nevertheless be similarly immunized from the immigration laws (unless, at some point in the future, he should commit some new act rendering him removable). Such a result should not be countenanced. To a significant degree, it would be tantamount to a grant of citizenship by the Court, contrary to the rule of INS v. Pangilinan, 486 U.S. 875, 885 (1988), that federal courts do not have the power to grant citizenship. At a minimum, it would be a judicial grant of open-ended lawful status to Murray, notwithstanding the fact that he has no basis for such status under the immigration laws.

To avoid such a radical outcome, the government urges the Court to limit Medina to its

facts and not extend its *res judicata* holding to this case. This approach would not threaten any basic rights (since there is no possibility of U.S. citizenship) or otherwise offend reasonable notions of justice. It must be remembered that a deportation proceeding is "a purely civil action to determine eligibility to remain in this country . . . ." INS v. Lopez-Mendoza, 468 U.S. 1032, 1038 (1984). "The purpose of deportation is not to punish past transgressions but rather to put an end to a continuing violation of the immigration laws." Id. at 1039; see also Reno v. American-Arab Anti-discrimination Committee, 525 U.S. 471, 491 (1999) ("in all cases, deportation is necessary in order to bring an end an ongoing violation of United States law") (emphasis in original). Deportation of Murray on account of his drug crimes would not be an additional punishment for his drug crimes, so there is no basis for concern that application of *res judicata* is necessary to prevent double jeopardy. See also Oliver v. U.S. Dept. of Justice, 517 F.2d 426 (2d Cir. 1975) (deportation of resident alien following narcotics conviction does not constitute violation of double jeopardy clause or cruel and unusual punishment; "[d]eportation, however severe its consequences, has been consistently classified as a civil rather than a criminal procedure.") (quoting Harisiades v. Shaughnessy, 342 U.S. 580, 594 (1952)). Under any circumstances, while deportation may involve a degree of hardship, which of course will vary according to the personal circumstances of the particular alien, it is not punishment, as both the Supreme Court and the Second Circuit have held. See id.; Carlson v. Landon, 342 U.S. 524, 537 (1952).

  In sum, the Immigration Judge in this case was correct in holding that *res judicata* should not apply where the two proceedings in question involved the same alien, but different grounds of removability. Further, the BIA was correct in affirming that decision. Therefore, this Court

should deny Murray's habeas petition and affirm the removal order.

## CONCLUSION

For the foregoing reasons, the respondents respectfully request that the Court deny the petition on the merits.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


LISA E. PERKINS
ASSISTANT UNITED STATES ATTORNEY
450 MAIN STREET, ROOM 328
HARTFORD, CT  06103
(860) 947-1101
FEDERAL BAR NO. ct23164

## **CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the within and foregoing has been served via United States first class mail, postage prepaid, this 17th day of May, 2004, to:

Carroll L. Lucht
Jerome N. Frank Legal Services Organization
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090

*Counsel for Petitioner*

                  _____
                  LISA E. PERKINS
                  ASSISTANT UNITED STATES ATTORNEY